UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No: 14-20106-CV-UNGARO/OTAZO-REYES

HEATHER RILEY, individually and on behalf of all others
similarly situated,

  Plaintiff,

v.

HOME RETENTION SERVICES, INC.,
et al.,

  Defendants.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

  Plaintiff, Heather Riley, individually and on behalf of all others similarly situated, ("Riley" or "Plaintiff"), by and through its undersigned counsel, files this Memorandum of Law in Support of Joint Motion for Certification of Settlement Class and Preliminary Approval of the proposed Class Action Settlement ("Joint Motion"). In support of the motion, Plaintiff states as follows:

### I. INTRODUCTION

  Plaintiff has alleged in this action that Heather Riley had a mortgage that was previously serviced by Countrywide Home Loans and which was in default when Defendant Bank of America, N.A. ("BOA") began collecting it. On or about May 14, 2013, Defendant Home Retention Services Inc. (HRSI) sent a form letter to Heather Riley and her ex-husband on BOA letterhead. (Exhibit A to Joint Motion, "Principal Reduction Letter.") That letter offered to reduce the Principal amount of her mortgage loan if she made three trial loan modification payments. This Principal Reduction Letter was a form letter issued to thousands of Florida consumers who were in default. Defendants have disputed certain aspects of Plaintiff's factual allegations.

  Plaintiff asserts that the Principal Reduction Letter violates the FDCPA for all class

members as follows:

    a.    Defendants violated 15 U.S.C. §§ 1692e and e(10) by overstating the amount of principal reductions offered;

    b.    Defendants violated 15 U.S.C. §§ 1692e and e(10) by failing to clearly disclose their Principal reduction calculation;

    c.    Defendants violated 15 U.S.C. §§ 1692e and e(10) by deceptively representing that "past due late fees will be waived," when Defendants intended to add "Past Due Fees" to the artificial interim principal balance;

    d.    Defendants violated 15 U.S.C. §§ 1692e and e(10) by creating consumer confusion by deceptively representing that "principal reduction will be applied, and your loan will be brought up to date. We will then permanently reduce your principal balance by the amount of $159,686.65.*";

    e.    Defendants violated 15 U.S.C. §§ 1692e and e(10) by falsely representing that the Principal Reduction Letter was from BOA when it was actually from HRSI, thereby also violating 15 U.S.C. §§ 1692e(9) through the use and distribution of a written communication which creates a false impression as to its source, authorization, or approval as having been from BOA;

    f.    Defendants violated 15 U.S.C. §§ 1692e and e(10) by contradicting and overshadowing the details concerning how BOA was calculating principal reductions by representing overstated amounts not actually given or intended to be given;

    g.    Defendant HRSI violated 15 U.S.C. §§ 1692e and e(11) by failing to disclose, in the Principal Reduction Letters, that HRSI was attempting to collect a debt and that any information obtained will be used for that purpose;

    h.    Defendant HRSI violated 15 U.S.C. §§ 1692e and e(14) by the use of any business, company, or organization name, Bank of America, N.A., other than the true name of HRSI's business, company, or organization;

    i.    BOA violated 15 U.S.C. §§ 1692e, e(2)(A), and e(10) by implying that it was the person who owned the loans of Plaintiff Riley and the Class.

Defendants have also disputed Plaintiff's claims of liability.

After briefing was complete on Class Certification, but before this Court ruled, the parties entered into settlement negotiations. Eventually, the parties agreed to a Common Fund Settlement Class in which Defendants would pay a total amount of four hundred and fifty thousand dollars ($450,000.00) in exchange for a release of liability for claims under the FDCPA that are based upon, arise out of, or relate to any of the facts alleged in this action.

The Settlement Class is defined as:

> All persons in the State of Florida who received a Principal Reduction Letter substantially similar to Exhibit "A" to the Third Amended Complaint within the one year period prior to the filing of the initial Complaint in this action.

The Settlement Fund is intended by Plaintiff and Class Counsel to be disbursed as follows:

| | |
|---|---|
| $450,000.00 | Total Settlement Fund |
| ($135,000.00) | Attorney Fees (30%) |
| ($ 6,212.83) | Costs |
| ($ 3,000.00) | Class Representative Award to Ms. Riley |
| ($ 22,000.00) | Ms. Riley's release of individual claims including actual and statutory damages. |
| ($ 10,000.00) | Settlement Administration (estimated) |
| **$273,787.17** | Pro-Rata Class Recovery |

With approximately 2,737 Settlement Class members, each class member shall receive a

3

Settlement Payment of approximately $100 under the terms of the Settlement.[1]

## II.     THE LEGAL STANDARD FOR PRELIMINARY APPROVAL

Rule 23 of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992).

"Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citation omitted). In the second step,

---

[1] This amount may vary depending on actual settlement administration costs, the Court's approval of Attorneys' Fees, costs, the Plaintiff's Individual Award, and the Plaintiff's Service Award.

4

after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 240119, at *2 (S.D. Fla. June 15, 2010) .

The standard for preliminary approval of a class action settlement is not high—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 at 62, 64-56 (5th ed. 1982). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (citation omitted); *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

Here, the proposed settlement is the product of arm's-length negotiations by counsel with significant experience in consumer class action litigation, carries no "obvious deficiencies," and falls well within the range of reason.

To approve a class action settlement, the trial court must find that the agreement was fair, reasonable, and adequate. *Bennett,* 737 F.2d at 986. Some of the factors to be considered in making this determination include: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risk of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Id.*

Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage. *See, e.g.*, *Smith*, 2010 WL 2401149 at *2. The Court's grant of preliminary approval will allow Settlement Class Members to receive notice of the proposed Settlement's terms, and of the date and time of the Final Approval Hearing at which Settlement Class Members may be heard, and

at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the parties. *See Manual for Compl. Lit.*, §§ 13.14, 21.632. However, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

### III. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23

For settlement purposes, the parties have jointly requested that this Court certify the Settlement Class as defined in the Settlement Agreement. It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D.Fla.2006) (internal quotation marks omitted). When a trial court "certifies for class action settlement only, the moment of certification requires 'heightene[d] attention,' to the justifications for binding the class members ... because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save the final fairness hearing." *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 848-49, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (citation omitted) (*quoting Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (alteration in original)); *see also Simer v. Rios,* 661 F.2d 655, 664-66 (7th Cir.1981) (requiring a higher showing of fairness where the settlement is negotiated prior to certification); *Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30, 33 (3d Cir.1971) (holding that the court must be doubly careful where negotiation occurs before certification and designation of class counsel). Certification of the proposed Settlement Class will allow notice of the proposed Settlement to issue, thereby informing class members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.

Class Certification has been fully briefed in this matter. Defendants do not oppose class certification for purposes of settlement only. Accordingly, the arguments set out in Plaintiff's Motion and Memorandum of Law in Support of Class Certification need not be laid out here again in full. (Doc. 213). For Settlement purposes, Plaintiff asks this Court to certify the

6

following Settlement Class pursuant to Rule 23(a) and (b)(3):

> All persons in the State of Florida who received a Principal Reduction Letter substantially similar to Exhibit "A" to the Third Amended Complaint between January 10, 2013 and January 9, 2014.

(See Exhibit B to Joint Motion, Settlement Agreement Article II).

### IV. THIS SETTLEMENT FALLS WITHIN THE "RANGE OF REASONABLENESS" AS TO ITS FAIRNESS, ADEQUACY AND REASONABLENESS.

Once the class has been found to meet the requirements for certification, the analysis turns to the terms of the proposed settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" such that notice should be issued to the class. *4 Newberg* § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011)(citing *Manual for Complex Litigation*, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

The factors that should be considered in making the determination of whether this settlement falls "within the range of reasonableness" are commonly referred to as the *Bennett* factors and include: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risk of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. Bennett., 737 F.2d at 986.

At this preliminary approval stage, this Court can determine that each of the *Bennett*

fairness factors weighs in favor of preliminarily approving the terms of this Settlement. First, the Settlement was reached in the absence of collusion, and is instead the product of good-faith, informed and arm's length negotiations by competent and experienced counsel. Second, this matter is being settled by counsel experienced in this type of litigation after extensive discovery, narrowing of the issues through motions to dismiss and after full briefing on class certification.

Third, a preliminary review of the remaining *Bennett* fairness factors, in light of the terms of the settlement, indicates that the terms of the Settlement appear to be fair, adequate and reasonable. As alleged in Plaintiff's Third Amended Complaint, Plaintiff and all members of the Settlement Class received the Principal Reduction Letter from Defendants in connection with their mortgage. The claims regarding this letter have been narrowed to only include a claim under the Fair Debt Collection Practices Act (FDCPA) seeking statutory damages, which are likely capped at $500,000.00 under the circumstances of this case. See, 15 U.S.C. 1692(k). Accordingly, the Settlement relief in this matter is actually very close to the total amount of statutory damages that could have been awarded at trial.

Under the proposed Settlement Agreement, each class member will receive a Settlement Payment of approximately $100. Importantly, there will be no "claims made" process that requires class members to fill out claim forms in order to receive this benefit. Upon final approval, the checks will simply be disbursed. When a trial on the merits could not result in substantially more relief for the class than the proposed settlement, surely a finding of preliminary approval is warranted.

Accordingly, this Court should find that the proposed Settlement appears to be within the range of reasonableness such that notice should issue to the Settlement Class, a final Fairness Hearing should be scheduled, and the Settlement Class should be provisionally certified for settlement purposes.

## V.   THE INCENTIVE OR SERVICE AWARD FOR PLAINTIFF IS APPROPRIATE

Traditionally, class representatives are compensated for the time and effort in bringing the litigation on behalf of others through what is termed an "incentive award." Many courts have addressed incentive awards to class representatives as a means to encourage litigants to bring

class litigation, which will further the public policy underlying the statutory scheme.

Incentive or service awards are not uncommon in class action litigation where, as here, a common fund has been created for the benefit of the class. Incentive awards compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006)(citing *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 272-76 (S.D.Ohio 1997)). Incentive awards serve an important function, particularly where the named plaintiffs participated actively in the litigation. *Id.* (citing *Denney v. Jenkens & Gilchrist,* 230 F.R.D. 317, 2005 WL 388562, at *31 (S.D.N.Y. Feb.18, 2005)).

While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. *Allapattah Servs.*, 454 F. Supp. 2d at 1218-19. In fact, "'[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D.Ga.2001)(quoting *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 272 (S.D.Ohio 1997)(collecting cases)); *see also Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.1998) (affirming award of $25,000 to named plaintiff); *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 400 (D.D.C.2002) ("Incentive awards are not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class.... In fact, [c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation") (internal quotations and citation omitted); *Godshall v. Franklin Mint Co.,* 2004 WL 2745890, at *6 (E.D.Pa. Dec.1, 2004) (granting special award of $20,000 to each named plaintiff for their work as class representatives); *In re Linerboard Antitrust Litig.,* 2004 WL 1221350, at *18-19 (E.D.Pa. June 2, 2004) (awarding $25,000 for each of the five class representatives); *Tenuto v. Transworld Sys.,* 2002 WL 188569, at *4-5 (E.D.Pa. Jan.31, 2002) (granting award of $2,000); *Dornberger v. Metropolitan Life Ins. Co.,* 203 F.R.D. 118, 124-125 (S.D.N.Y.2001) (approving an award of $10,000 for Dornberger and $1,500 for the eight sub-class representatives); *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 145 (E.D.Pa.2000) ("courts

9

routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 449 (S.D.Tex.1999) (granting awards of between $1,000 and $10,000); *In re Residential Doors Antitrust Litig.,* 1998 WL 151804, at *11 (E.D.Pa. Apr.2, 1998) (awarding an incentive award of $10,000 to each of the four Class representatives); *In re Plastic Tableware Antitrust Litig.,* 1995 WL 723175, at *2 (E.D.Pa. Dec.4, 1995) (granting award of $3,000); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 357 (N.D.Ga.1993) (granting award of $2,000 to plaintiffs that produced documents and awarding $5,000 to plaintiffs that were also deposed).

In *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998), the Seventh Circuit provided a list of some pertinent considerations when evaluating an incentive award:

> Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. . . . In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

*Cook,* 142 F.3d at 1015 (citation omitted).

The class representative in this matter, Ms. Heather Riley, has participated in pre-suit investigation, participated in this litigation for over a year, she has answered interrogatories and produced substantial documentation, she has been deposed and has overseen the Settlement negotiations on behalf of the class. The proposed incentive award of $3,000 is well within the range of reasonableness and acts to compensate Ms. Riley for her time representing the class in this matter. Accordingly the incentive award set forth in the Settlement Agreement should be approved.

## VI.   PLAINTIFF'S ATTORNEY FEES AND EXPENSES

Class Counsel seeks an award of attorney fees and costs equal to 30% of the Settlement Fund or one hundred and thirty five thousand dollars ($135,000.00). In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement. *Camden I Condominium Assn. v. Dunkle*, 946 F.2d 768 (11th Cir.1991). In *Camden I*, the

Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.28.

Although there is "no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case," this Court can view the request at the preliminary approval stage and determine whether it appears to fall within the range of reasonableness without actually awarding any fee at this preliminary stage. *In re Sunbeam*, 176 F.Supp.2d at 1333 (quoting *Camden I*, 946 F.2d at 774). Accordingly, Courts within this Circuit have determined that "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund," although "an upper limit of 50 percent of the fund may be stated as a general rule." *Id.* (quoting *Camden I*, 946 F.2d at 774–75); see also *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir.1999) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher based on the circumstances of the case). See also, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358-59 (S.D. Fla. 2011)(awarding 30% of the Common Fund).

Prior to Final Approval, Class Counsel will submit a formal Motion for Attorney Fees and Costs which addresses each of the 12 *Camden I* factors, which include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I,* 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)).

Settlement agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after material terms of

the settlement have been agreed to between the Parties. See, *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney fees").

Because 30% of the Common Fund is an amount regularly awarded in common fund class actions within this Circuit, this Court should find that this requested amount (whether or not finally granted) is certainly within the range of reasonableness such that preliminary approval should be granted and notice should be issued to the class.

**VII.   THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS**

Notice is an integral part of Rule 23(b)(3).  Class actions under this subdivision are only allowed when common questions of fact or law predominate and class-action treatment is thought to be superior to other available means of settling the controversy.  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652 (1950).  Without the notice requirement, it would be constitutionally impermissible to give the judgment binding effect against the absent class members.  Notice to the class must be given before entry of judgment in order to allow class members the opportunity to either participate in the proceedings, or to opt out of the proceedings.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-176 (1974) (notice and opportunity to opt out required by due process).  Notice must be sent well before the merits of the case are adjudicated.  *Brown v. Colegio de Abrogados de Puerto Rico*, 613 F.3d 44, 51 (1st Cir. 2010) (The purpose of the rule regarding notice for a class action is to ensure that the plaintiff class receives notice of the action well before the merits of the case are adjudicated.)

The Eleventh Circuit's position on class notice in Rule 23(b)(3) certified class actions is one of strict adherence to due process.  *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir. 2000) (holding that certification under Rule 23(b)(3) would require that the class members receive notice of the suit "well before the merits of it are adjudicated.") citing *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995); See also Fed. R. Civ. P. 23(c)(2); 7B Wright, Miller & Kane, *Federal Practice and Procedure* § 1788 (2nd ed. 1986)).

With regard to the content of the notice, Rule 23 states that "the notice must clearly and

concisely state in plain, easily understood language" the following:

      (i)      The nature of the action;

      (ii)     The definition of the class certified;

      (iii)    The class claims, issues, or defenses;

      (iv)    That a class member may enter an appearance through an attorney if the member so desires;

      (v)     That the court will exclude from the class any member who requests exclusion;

      (vi)    The time and manner for requesting exclusion; and

      (vii)   The binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(b).

Attached as Exhibit C to the Joint Motion is a class notice which the parties believe satisfies the requirements of Rule 23(c)(2)(b). The notice will be sent out by first class mail to the last known names and addresses of all class members pursuant to the Settlement Agreement. Plaintiff requests that this Court approve the notice in the form of Exhibit C to the Joint Motion and that this Court order the Settlement Administrator to issue notice to the class upon preliminary approval.

## VIII. CONCLUSION

For the reasons set forth above, this Court should enter the Proposed Preliminary Approval Order allowing notice to be issued to the class and taking this Settlement to the next stage or resolution.

| | |
|---|---|
| February 6, 2015. | **VARNELL & WARWICK, P.A.** |

/s/ Janet R. Varnell
Janet R. Varnell, Esquire
Florida Bar No. 0071072
P.O. Box 1870
Lady Lake, FL  32158
Telephone:  (352) 753-8600
Facsimile:   (352) 504-3301
jvarnell@varnellandwarwick.com

**SPARK LAW CHARTERED**
Andrew Bennett Spark, Esquire
Florida Bar No. 0899811
9654 W. Linebaugh Ave., #187
Tampa, FL  33626
Telephone: (813) 475-4576
Facsimile:  (813) 441-1117
abspark@msn.com

Jeffrey B. Lampert, Esquire
Florida Bar No. 260800
The Barristers Building
1615 Forum Place, Suite 4-B
West Palm Beach, FL 33401
Telephone:  (561) 333-0188
Facsimile:   (561) 333-0588
lampertcal1@gmail.com

Rory K. Rohan, Esquire
Sunshine State Law Group
Florida Bar No. 0310093
900 Colony Point Circle, Ste. 310
Pembroke Pines, FL 33026
Telephone:  (561) 252-4411
rory@rorykrohan.com

**Attorney for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2015, a true and correct copy of the foregoing was served via the CM/ECF system on all parties listed below:

**Attorneys for Home Retention Services, Inc. and Stewart Lender Services, Inc.**

Gerard D. Kelly, Esq.
gkelly@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603

Cary A. Lubetsky, Esq.
cal@khllaw.com
KRINZMAN, HUSS & LUBETSKY
800 Brickell Ave., Suite 1501
Miami, FL 33131

**Attorneys for Michael Gabrielli and Bank of America, N.A.**

Martin J.E. Arms, Esq.
MJEArms@wlrk.com
Caitlin A. Donovan, Esq.
CADonovan@wlrk.com
Aneil K. Kovvali, Esq.
AKovvali@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

Eugene E. Stearns, Esq.
estearns@stearnsweaver.com
Gordon M. Mead, Jr., Esq.
gmead@stearnsweaver.com
Joshua A. Munn, Esq.
jmunn@stearnsweaver.com
Jenea M. Reed, Esq.
jreed@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130

/s/ Janet R. Varnell_____
Janet R. Varnell