UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No:  14-20106-CV-UNGARO/OTAZO-REYES

**HEATHER RILEY,**
**individually and on behalf of all others**
**similarly situated,**

      Plaintiff,

**HOME RETENTION SERVICES, INC.,**
*et al.*,

      Defendants.

_____ /

## PLAINTIFF HEATHER RILEY'S UNOPPOSED APPLICATION FOR ATTORNEYS FEES, COSTS, AND INCENTIVE AWARD

Now comes Heather Riley, by and through the undersigned attorneys, who, as ordered by the court in section IV(3) of its March 18, 2015, order [D.E. 236, at p. 9], hereby applies for an award of attorneys' fees, reimbursement of costs, and an incentive award for Ms. Riley for her services as class representative.  Ms. Riley hereby applies for an award of attorneys' fees in the amount of $135,000 (30% of the gross recovery), costs in the amount of $4,466.81, and an incentive award of $ 3,000.00, and as grounds states that the fees and incentive award sought are reasonable, and the costs sought were reasonable incurred in furtherance of the settlement of this action.

Defendants have agreed not to contest this application.

## MEMORANDUM OF LAW

As a threshold matter, S.D.Fla. Local R. 7.3 does not apply since this application is not for fees or costs "arising from the entry of a final judgment or order."  28 U.S. Code § 1920 does not apply since Class Counsel seek costs out of a common fund, and are not seeking costs via taxation.

**I.     THE INCENTIVE OR SERVICE AWARD FOR PLAINTIFF IS APPROPRIATE**

Traditionally, class representatives are compensated for the time and effort in bringing the litigation on behalf of others through what is termed an "incentive award." Many courts have addressed incentive awards to class representatives as a means to encourage litigants to bring class litigation, which will further the public policy underlying the statutory scheme. Incentive or service awards are not uncommon in class action litigation where, as here, a common fund has been created for the benefit of the class. Incentive awards compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006) (citing *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 272-76 (S.D. Ohio 1997)). Incentive awards serve an important function, particularly where the named plaintiffs participated actively in the litigation. *Id*. (citing *Denney v. Jenkens & Gilchrist,* 230 F.R.D. 317, 2005 WL 388562, at *31 (S.D.N.Y. Feb.18, 2005)).

While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. *Allapattah Servs*., 454 F. Supp. 2d at 1218-19. In fact, "'[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 272 (S.D. Ohio 1997) (collecting cases)); *see also Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.1998) (affirming award of $25,000 to named plaintiff); *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class. . . . In fact, [c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation") (internal quotations and citation omitted); see *Muzeco v. Re$ubmitIt, LLC*, Case 0:11-cv-62628-RNS (S.D.Fla. Nov. 6, 2014) ($20,000 incentive award); *Godshall v. Franklin Mint Co.,* 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) (granting special award of $20,000 to each named plaintiff for their work as class representatives); *In re Linerboard Antitrust Litig.,* 2004 WL 1221350, at *18-19 (E.D. Pa. June 2, 2004) (awarding $25,000 for each of the five class

representatives); *Tenuto v. Transworld Sys.,* 2002 WL 188569, at *4-5 (E.D. Pa. Jan. 31, 2002) (granting award of $2,000); *Dornberger v. Metropolitan Life Ins. Co.,* 203 F.R.D. 118, 124-125 (S.D.N.Y. 2001) (approving an award of $10,000 for *Dornberger* and $1,500 for the eight sub-class representatives); *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 449 (S.D. Tex. 1999) (granting awards of between $1,000 and $10,000); *In re Residential Doors Antitrust Litig.,* 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (awarding an incentive award of $10,000 to each of the four Class representatives); *In re Plastic Tableware Antitrust Litig.,* 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995) (granting award of $3,000); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 357 (N.D. Ga. 1993) (granting award of $2,000 to plaintiffs that produced documents and awarding $5,000 to plaintiffs that were also deposed).

The class representative in this matter, Ms. Heather Riley, has participated in pre-suit investigation, participated in this litigation for over a year, answered interrogatories and produced substantial documentation, been deposed, and overseen the Settlement negotiations on behalf of the class. The proposed incentive award of $3,000 is well within the range of reasonableness and acts to compensate Ms. Riley for her time representing the class in this matter. Accordingly the incentive award set forth in the Settlement Agreement should be approved.

## II.     PLAINTIFF'S ATTORNEY FEES AND EXPENSES

As more fully discussed herein, hard-fought, arm's-length negotiations between the Parties over the course of several months resulted in the Settlement Agreement. Consistent with the terms of the Parties' Settlement Agreement, Plaintiff's counsel intends to seek the Court's approval of a payment in the amount of $135,000 for fees and reimbursement of $4,466.81 in expenses incurred during the course of this litigation. The requested fee amount results in a substantial negative multiplier based on the lodestar amassed to date. Based on the significant complexity, hard-fought nature of the litigation, and the scope of the claims that were at issue, such a low multiplier—in fact a fractional multiplier—is reasonable to compensate Plaintiff's counsel for the result obtained for the Settlement Class. This is well below the standard range of percentage fees approved by federal courts in this Circuit and nationwide.

All of Plaintiff's counsel's time and expenses were contingent and have not been reimbursed, even though this case has been pending for over a year and counsel expended over $6,000 in total litigation expenses, not all of which are sought to be recovered by Class Counsel, for the benefit of the Class. As detailed below, the fee and expense amount requested is reasonable, whether based on a percentage of recovery or lodestar multiplier approach. Defendants do not oppose this application.

Having reached a Class Settlement with Defendants which creates a common fund for the benefit of the Settlement Class, it is well established that Plaintiff's counsel is entitled to seek fees and expenses from the fund. Courts have long recognized the "common fund" or "common benefit" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs based on the common benefit achieved. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 2014 U.S. Dist. LEXIS 26002, at *25 (S.D. Fla. Feb. 28, 2014) (citing to *Boeing* and holding that "[t]he 'common fund' analysis is appropriate even where the fee award will be paid separately by Defendants.")

In this case, the fees and costs requested by Plaintiff's counsel represent only a fraction of what their lodestar would be and, expressed as a percentage of the common fund, are entirely consistent with commensurate awards within this Circuit.

### A.   The Requested Attorneys' Fees are Reasonable and Appropriate

The Percentage-of-the-Benefit method supports the reasonableness of the negotiated fee award. Class Counsel seeks an award of attorney fees equal to 30% of the Settlement Fund, or one hundred and thirty five thousand dollars ($135,000). In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement. *Camden I Condominium Assn. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991). In *Camden I*, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I,* 946 F.2d at 774.

4

Although there is "no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case," this Court can view the request at the preliminary approval stage and determine whether it appears to fall within the range of reasonableness without actually awarding any fee at this preliminary stage. *In re Sunbeam,* 176 F.Supp.2d at 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I,* 946 F.2d at 774).

In the Eleventh Circuit, fee awards generally range from 20% to 30%, up to a generally recognized upper limit of 50%. *Sunbeam* 176 F.Supp.2d *at* 1333. *see also Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher based on the circumstances of the case). *See also In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1358-59 (S.D. Fla. 2011) (awarding 30% of the Common Fund). That having been said, in at least one recent case in this court, the fee award was more than 55%. See *Muzeco*.

The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower. See *Waters,* 190 F.3d 1291, 1295-96. Here, no claim will even be necessary.

There are several indicators of value for this Settlement. Pursuant to any one of them, Plaintiff's counsel's requested fee award is consistent with the "benchmark" 30%. The benefits to Class Members here are concrete and the percentage-of-the-benefit method further confirms that the fee award requested by Plaintiff's counsel is reasonable and appropriate.

### B. The Eleventh Circuit's *Camden I* Factors Support Class Counsel's Requested Fee

The Eleventh Circuit has provided a set of non-exclusive factors the Court should use to determine a reasonable percentage-based award to Class Counsel, including:

(1) the time and labor required;
(2) the novelty and difficulty of the questions involved;
(3) the skill required to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;

5

   (8)  the amount involved and the results obtained;
   (9)  the experience, reputation, and ability of the attorneys;
   (10) the undesirability of the case;
   (11) the nature and the length of the professional relationship with the client;
   (12) awards in similar cases.

*Camden I,* at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

  **C.**  **Time and labor**

  An analysis of the requested fee considering Plaintiff counsel's time and labor supports the reasonableness of the requested fee award. Indeed, district courts in the Eleventh Circuit have employed a lodestar cross-check for guidance in assessing the reasonableness of a fee award. Plaintiff's counsel Varnell & Warwick, P.A. has expended 148 hours (and expect additional time and expense through the final approval process and continued monitoring of the settlement administration), and Spark Law Chartered has expended more than 871.9 hours in total on the settled claims with approximately $4,466.81 in unreimbursed costs.  Jeffrey Lampert has expended 42.6 hours.[1]  Total time of Class Counsel on the settled claims, not even including attorney Rory Rohan, is over 1,000 hours, yet they are asking for only $135,000 in fees.

  Several FDCPA issues in this action were vigorously litigated by both of the settling defendants.  The settling defendants filed two motions to dismiss each, not merely challenging whether the Principal Reduction Letter was violative of the FDCPA, but even challenging whether the FDCPA governed the Principal Reduction Letter.  Those coverage issues included what BOA argued was a "merger exemption," whether HRSI was subject to the FDCPA due to what it maintained was its limited role with respect to the Principal Reduction Letter, and whether the Principal Reduction Letter was "in connection with collection of a debt."  Indeed, the briefing with respect to the motions to dismiss evidence that, taking into account both rounds of

---

[1] These fees and costs amounts are supported by the declarations of Plaintiff's counsel submitted in support of Plaintiff's Memorandum of Law in Support of Amended Joint Motion for Certification of Settlement Class and Preliminary Approval of Class Action Settlement [D.E. 234-1], including in the Declarations of Janet R. Varnell and Andrew B. Spark (D.E. 234-1, Exhibits 1 & 2 respectively, at pp. 27-41).  See also, as well as supplemental declaration of Mr. Spark, as well as a declaration of Jeffrey Lampert, filed as Exhibits 1 and 2 to this application. The declarations identify the attorneys and staff who worked on the case.

briefing, the majority of the briefing, or at least close to the majority, was expended on FDCPA issues.

Moreover, the issues raised by Bank of America, N.A. with respect to the alleged merger exemption were highly factual, and were the subject of substantial research by Plaintiff and communications between counsel that are not necessarily evident from the court file. In this regard, Plaintiff's task in maintaining this action was made all the more difficult and time-consuming due to the fact that the initial round of motions to dismiss contained hundreds of pages of documents, especially since Plaintiff had to thoughtfully consider the ultimate ramifications of the contents of those documents not merely with respect to the motions to dismiss, but for the entire case. For better or worse, Plaintiff expended substantial time in a sincere attempt at addressing those factual assertions by filing an Amended Complaint as a matter of right. Those factual issues involved business organizational details concerning BOA and companies which were ultimately merged into it, and also to some extent concerning HRSI, since HRSI is a small subsidiary of a large, publicly-traded company but which does not have its own website, and the parent corporation's website and other information obtained by Plaintiff during this case do not at all specify the scope of activities HRSI actually conducts that were pertinent to this case. On a separate note as far as fact investigation, particularly before filing suit, but also to a degree afterward, Plaintiff expended a significant amount of time investigating whether there were any official government policies or letter templates authorizing or otherwise endorsing the defendants' use of the terminology "principal reduction" in the Principal Reduction Letter.

Even bringing the proper defendants before the court required substantial investigatory time from Plaintiff since HRSI was not identified on the Principal Reduction Letter (which was sent on BOA letterhead), shares office space with a corporate affiliate, since Defendant Gabrielli is based in New York rather than Houston (which is where the Principal Reduction Letter was sent from), and since the Principal Reduction Letter might reasonably lead the reader to consider the possibility that the actual creditor at the time the Principal Reduction Letter was sent was Bank of America, N.A., not the certificate holders of a trust who were not identified in the letter. With respect to Gabrielli, Plaintiff successfully obtained an extension of time to serve him with process, and never was actually able to do so, despite substantial efforts, until after some negotiations with defense counsel he voluntarily appeared in the case. Even after he appeared,

however, Gabrielli moved to dismiss on grounds of personal jurisdiction over him, an argument which Plaintiff successfully overcame.

Albeit not all in connection with FDCPA issues, the case also involved substantial discovery.  Plaintiff served detailed Rule 26 disclosures, served substantial discovery on BOA, and filed motions to compel that were extensively brief against BOA and that were heard before Magistrate Otazo Reyes in July of 2014.  In addition, written discovery was served on Plaintiff, in response to which she provided substantial answers and documents, and she was subsequently deposed.  Plaintiff filed a motion and supporting memorandum for class certification, and subsequent reply memorandum in support, and the case was settled after trial was set.  Plaintiff's initiation of the case was based upon Mr. Spark's own research, as Plaintiff knows of no other lawsuit that has been filed, or governmental investigation, concerning the core claims by Plaintiff that the principal reduction offer was inaccurately represented, so Plaintiff did not have the kind of templates to work off of that are often available in tag-along class actions or cases based on industry-wide practices where similar litigation has already been filed. Mr. Spark's extensive background in FDCPA and foreclosure litigation, as well as financial education at The Wharton School, aided in the conception of the case.

As set forth in the Declaration of Andrew Bennett Spark filed with this application, prosecuting and settling the claims here demanded considerable time and labor. The complexity of this case required substantial organization by Class Counsel, including several hours investigating the claims of other potential plaintiffs against Defendants in this action.  Class Counsel interviewed Bank of America borrowers and potential plaintiffs to gather information about Defendants' conduct and its impact upon consumers; obtained, reviewed, sorted, analyzed Bank of America mortgages, and other discovery.  Class Counsel also faced a significant hurdle responding to various dispositive motions.  After the parties agreed to a settlement, Class Counsel, primarily Janet Varnell, engaged in discussions over the terms of the Settlement Agreement, Notice, and claim forms and drafted those documents. Further, the Settlement requires a continuing role for Class Counsel after final approval. These substantial efforts justify awarding Class Counsel the requested fee.

The fee requested by Class Counsel is highly-reasonable considering the substantial work performed during the course of litigation, using counsel's standard hourly rates that have been approved by courts over the last several years. In fact, the fee requested is far less than a straight

lodestar calculation would be; in other words, awarding the requested fee would result in a significant reduction, rather than a traditional enhancement.

The fee by Plaintiff's counsel is eminently reasonable considering the substantial work performed during the course of litigation. In fact, the fee requested is far less than a straight lodestar calculation using counsel's standard hourly rates that have been approved by courts over the last several years; in other words, awarding the requested fee would result in a significant reduction in Class Counsel's lodestar, rather than a traditional enhancement.

### D. Novelty and Difficulty/ Skill, Experience, and Reputation of Class Counsel

Likewise, it is beyond dispute that this litigation is of a complex nature, involving difficult and novel issues of law and fact. To litigate a case such as this requires counsel highly trained in class action matters and in specialized issues the case presents. The skill of counsel must be commensurate with the novelty and complexity of the issues in this case, as well as the skill of the opposing counsel. *See Walco Investments, Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D.Fla. 1997) (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"). The attorneys serving as Class Counsel have extensive experience in complex class action litigation and the FDCPA and have the specialized skills to handle this litigation. The abilities of Plaintiff's counsel were essential to the success of this litigation. As evidenced in the accompanying declarations, Plaintiff's counsel has substantial experience specifically in consumer class action litigation, and cases under the FDCPA. Counsel's skills in developing evidence, technical expertise, and understanding the strengths and weaknesses of their respective cases were critical to the results achieved for the Settlement Class.

Plaintiff's counsel developed a significant level of familiarity with the legal and factual issues sufficient to make a thorough appraisal of the adequacy of the settlement and provide meaningful relief to the Settlement Class.

Moreover, in accessing the quality of representation by Plaintiff's counsel, the Court also should consider the quality of the opposition. *See, e.g., Camden I*, 946 F.2d at 772, n.3; *Johnson*, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). The excellent quality of that opposition has been no less apparent, and has demanded the best possible performance of Plaintiff's counsel.

The quality of Class Counsel and their achievement in this case is equally shown by the strength of their opponents, New York-based Wachtell, Lipton, Rosen & Katz, (reportedly the most profitable BigLaw firm in the country), Chicago-based Sidley Austin, LLP (which has a truly global presence), local powerhouse Stearns Weaver (with Mr. Stearns himself serving as one of their counsel of record), and respected local firm that handles a lot of FDCPA cases, Krinzman, Huss & Lubetsky. This factor thus also favors awarding the requested fee.

Plaintiff's counsel expended a great deal of time and money in the prosecution of this litigation, foregoing other work, with no guarantee of success. Class Counsel's fee request is firmly rooted in "the economics involved in prosecuting a class action." *See In re Sunbeam*, 176 F. Supp. 2d at 1333.

Class action litigation is intended to encourage the filing of claims to "vindicate[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980). Contingent-type fee arrangements play a vital role by giving a financial incentive to skilled attorneys to serve as class counsel. *Id.* at 338 n.9. Plaintiff respectfully submits that the requested fee of $135,000 is entirely reasonable and consistent with the fees typically awarded in such cases.

The proposed Settlement provides an outstanding recovery for Settlement Class Members as detailed herein. The benefits to the proposed Settlement Class and extent of recovery afforded each Settlement Class Member, given the complained of allegations, is exceptional, resulting from the dedication and hard work of Plaintiff's counsel. By any reasonable view, this case was risky. The issues were complex; the legal hurdles substantial; the opponent ably defended and the time and expense demands daunting. Such circumstances justify a generous fee award. "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *In re Sunbeam,* 176 F. Supp. 2d at 1336. Contingency fee litigation is always risky. Despite this risk, Plaintiff's counsel secured an excellent result in this litigation.

This case presents novel questions of law and complex issues of fact. Class action matters are generally complex, but this one is particularly so, at least in the sense that Defendants filed

10

hundreds of pages of documents to support their initial motion to dismiss, relying on language in those documents - including the National Mortgage Settlement and HAMP program rules. The difficulty of mastering and litigating these issues amply supports the full award requested.

Plaintiffs' counsel respectfully submits that the award of their full request for attorneys' fees and costs is therefore appropriate.

### E. The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action Support the Award.

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. See ); *Pinto v. Princess Cruise Lines.,* 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007).. Class Counsel's risk is the "foremost factor" in determining an appropriate fee award. See id. In *Behrens*, the court noted:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing. 118 F.R.D. at 548 (citations omitted).

These factors weigh in favor of awarding Class Counsel 30% of the overall benefits obtained. Class Counsel have received no compensation during the course of this litigation and have incurred substantial expenses litigating on behalf of the Class, which they risked losing had Defendants prevailed. See the accompanying Declaration of Andrew Bennett Spark. From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery and hence no compensation. Id. This case did not benefit from the tailwinds of a governmental investigation into the representations in question. Such tailwinds generally make a class action desirable. By contrast, in the instant case, Class Counsel faced headwinds from governmental agencies, since several governmental agencies have apparently been accepting Bank of America's calculation of the amount of principal reductions. Class Counsel served public records requests upon the Attorney General Offices of New York, Massachusetts, and Florida, as well as the office of the monitor of the National Mortgage Settlement, but received flat denials of anything but records already publicly-released from New York, Massachusetts, and the Monitor,

and the Florida Attorney General's Office did not in any way provide or records revealing how they calculated the amount of principal reduction for any given loan for which Bank of America received credit under the National Mortgage Settlement. As self-evident as it seems to Class Counsel (including Mr. Spark, a *cum laude* graduate of The Wharton School with a concentration (i.e., major) in Finance) that a principal reduction is merely the difference between the principal amount before the reduction and the principal amount afterward, various agencies have apparently accepted the validity of Defendants' calculation of "principal reduction."

The degree of risk in an action is determined from the time the action begins, and not at the time it settles. See *Pinto*, 513 F. Supp. 2d at 1340. Class Counsel's investment of time and expenses has always been at risk and wholly contingent on the result they achieved. The financial risks borne by Class Counsel fully support the fee requested.

### F. The Requested Fees Reflect the Market Rate in Complex, Contingent Litigation.

A fee of 30% of overall value is consistent with the market. "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. In private litigation, attorneys regularly contract for contingent fees consistent with Florida Bar rules at the default rate of 33 1/3%, increasing to 40% for litigated matters below seven figures. These percentages are the prevailing market rates throughout the United States for contingent representation. See *id*. at 1341 (citing, *inter alia*, *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986)). In making a determination of what constitutes a fair percentage fee, this Court should be guided by such awards. As the Eleventh Circuit stated in Camden I: "[A]n upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." 946 F.2d at 774-75. See, e.g., *Allapattah*, 454 F. Supp. 2d at 1210 (awarding fees of 31-1/3%); *Terazosin Hydrochloride Antitrust Litig*., No. 99–1317–MDL–Seitz (S.D. Fla. Apr. 19, 2005) (awarding fees of 33-1/3 %); *In re Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (35.5% of settlement).[2]

---

[2] See also, e.g., *Gutter v. E.I. Dupont De Nemours & Co*., 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (33-1/3 %); *Waters*, 190 F.3d 1291 (affirming 33-1/3 %); *Tapken v. Brown*, Case No. 90-

G.   **The Result Achieved for the Class.**

The result here is good, and perhaps best establishes the propriety of the requested fee award. The result achieved is a major factor to consider in making a fee award.  See *Hensley v. Eckerhart*, 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342; *Behrens*, 118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of both monetary and injunctive relief. See *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir.2003) ("[C]ourts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees.") (internal quotation and citation omitted); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005); *In re Managed Care Litig*., 2003 WL 228500700, at *6. The results here, more than $100 per class member, excellent for a FDCPA case.  Moreover, it has been held and Defendants vigorously maintained that statutory damages in a FDCPA class action are limited to maximum of $500,000 cumulatively for the class (other than the class representatives), see 15 U.S. Code § 1692k(a)(2)(b), and the Settlement provides that class members recover more than $270,000, which is more than half of the maximum to which they could be entitled.  These results are powerful evidence supporting the fee award.

H.   **The Undesirability of the Case.**

As noted in paragraphs 11 and 12 of the accompanying Declaration of Andrew Bennett Spark, the instant case was undesirable to leading class actions in the wake of a class certification decision favorable to Bank of America in mortgage modification litigation, and was also undesirable since it did not have the tailwinds of a governmental investigation into the same representations and conduct.

I.   **The Proportion of the Attorney Fee Relative to the Class Recovery is Not an Appropriate Basis for Denial of the Requested Attorney Fee**

---

0691-CIV, 1992 WL 178984, Fed. Sec. L. Rep. P 96805 (S.D. Fla. 1995) (33*%); In re Home Shopping Network Sec. Litig.*, Case No. 87-428-T-13(A) (M.D. Fla. 1991) (33%).

13

While this is a common fund settlement, Plaintiff notes that courts routinely recognize that the FDCPA fee-shifting provisions contemplate that attorneys' fees may be greater than the amount of any recovery by the plaintiff. Although few courts have analyzed fee requests in the context of settled FDCPA class actions, courts in individual FDCPA actions routinely award fees well in excess of the amount recovered for the party. *Danow,* 634 F. Supp. 2d at 1337, 1339 (awarding $62,895 in attorneys' fees upon plaintiff's recovery of $1,000 in statutory damages). Courts routinely award substantial attorneys' fees even where plaintiffs have *settled* for relatively small amounts. *See, e.g., Cabala,* 736 F.3d 226, 227, 230 (affirming fee award of $32,489.29 upon settlement of claim for $1,000); *Larsen* , 588 F. Supp. 2d 360, 362, 365 (awarding $64,606 in attorneys' fees following settlement of FDCPA claim for $1,000); *Randle,* 513 F. App'x 282, 283-85 (affirming fee award of $76,876 upon settlement for $6,000).

Courts awarding fees under the FDCPA explicitly reject the idea that such awards must be proportional to the amount a plaintiff has recovered. As one court explained:

> It is recognized that Plaintiffs are seeking approximately three and a half times their recovery in attorneys' fees and costs. Plaintiffs cite numerous cases where the proportion of attorneys' fees recovered by FDCPA and TDCA plaintiffs to the damage award was far higher. The disparity between the final award of damages and the attorneys' fees and expenses sought in this case is not unusual and is necessary to enable individuals wronged by debt collectors to obtain competent counsel to prosecute claims.

*Turner,* 552 F. Supp. 2d 648, 656 (awarding $56,143.47 in attorneys' fees upon $17,500 settlement); *see also Perez,* 742 F. Supp. 883, 891 ("Attorney fee awards under fee-shifting statutes often bear little or no relation to the actual or statutory damages recovered under those statutes."); *Norton,* 36 F. Supp. 2d 216, 218, 221 (award in FDCPA case need not be "proportional to the amount" recovered; awarding $57,206.34 upon $5,800 recovery). As held by the Eleventh Circuit in an FDCPA case,

> The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate. This "lodestar" may then be adjusted for the results obtained. Although a district court has wide discretion in performing these calculations, the court's order on attorney's fees must allow meaningful review — the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation.

*Moton v. Nathan & Nathan, P.C.*, No. 08-12337 (11th Cir. Oct. 28, 2008) (11th Cir. 2008), quoting *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citations and quotations omitted). In the instant case, the primary reason that the lodestar of Class Counsel can be reduced is that Class Counsel has agreed to accept a common fund fee award of far lower than their lodestar.

Plaintiffs' counsel respectfully submits that the award of their full request for attorneys' fees and costs is therefore appropriate

### III.  CONCLUSION

Class Counsel are only seeking a substantial negative multiplier for their fee, and are seeking a common fee percentage very much around the average in this circuit. Plaintiff's application for an award of attorneys' fees in the amount of $135,000 (30% of the gross recovery), costs in the amount of $4,466.81, and an incentive award of $3,000.00 should be approved.

### CERTIFICATE OF SERVICE

I hereby certify true and correct copies of the foregoing and exhibits were served via the CM/ECF system on all parties of record on the Service List below.

Dated April 8, 2015            Respectfully submitted,

     _s/Andrew Bennett Spark_____
Andrew Bennett Spark
SPARK LAW CHARTERED
Florida Bar Number 0899811
9654 W. Linebaugh Ave., #187
Tampa, FL  33626
Telephone: 813.475.4576
Facsimile: 813.441.1117
abspark@msn.com

Jeffrey B. Lampert, Esq.
Florida Bar Number 260800
The Barristers Building
1615 Forum Place, Suite 4-B
West Palm Beach, FL 33401
Tel. 561.333.0188
Fax 561.333.0588
lampertpleadings@gmail.com

Rory K. Rohan
Florida Bar Number 0310093
900 Colony Point Circle, Ste. 310
Pembroke Pines, FL 33026
Telephone:     (561) 252-4411
rory@rorykrohan.com

Janet R. Varnell
Florida Bar No. 0071072
VARNELL & WARWICK, P.A.
P.O. Box 1870
Lady Lake, FL 32158
Telephone:     (352) 753-8600
Facsimile:      (352) 504-3301
jvarnell@varnellandwarwick.com

***Attorneys for Plaintiffs***

**SERVICE LIST**

| | |
|---|---|
| Eugene E. Stearns, Esq. | Cary A. Lubetsky, Esq. |
| estearns@stearnsweaver.com | cal@khllaw.com |
| Gordon M. Mead, Jr., Esq. | KRINZMAN, HUSS & LUBETSKY |
| gmead@stearnsweaver.com | 800 Brickell Ave., Suite 1501 |
| Joshua A. Munn, Esq. | Miami, FL 33131 |
| jmunn@stearnsweaver.com | Telephone: (305) 854-9700 |
| Jenea M. Reed, Esq. | Facsimile: (305) 854-0508 |
| jreed@stearnsweaver.com | Attorneys for Defendants HOME |
| STEARNS WEAVER MILLER WEISSLER | RETENTION SERVICES, INC and |
| ALHADEFF & SITTERSON, P.A. | STEWART LENDER SERVICES, INC. |
| Museum Tower, Suite 2200 | |
| 150 West Flagler Street | |
| Miami, Florida 33130 | |
| Telephone: 305-789-3200 | |
| Facsimile: 305-789-3395 | |
| Attorneys for Defendants BANK OF AMERICA CORPORATION and BANK OF AMERICA, N.A. | |
| | |
| Gerard D. Kelly, Esq. | Martin J.E. Arms, Esq. |
| gkelly@sidley.com | MJEArms@wlrk.com |
| SIDLEY AUSTIN LLP | Caitlin A. Donovan, Esq. |
| One South Dearborn Street | CADonovan@wlrk.com |
| Chicago, Illinois 60603 | Aneil K. Kowali, Esq. |
| Telephone: (312) 853-7000 | AKovvali@wlrk.com |
| Facsimile: (312) 853-7036 | WACHTELL, LIPTON, ROSEN & KATZ |
| Attorneys for Defendants | 51 West 52nd Street |
| HOME RETENTION SERVICES, INC. | New York, New York 10019 |
| and STEWART LENDER SERVICES, INC. | Telephone: (212) 403-1000 |
| | Facsimile: (212) 403-2000 |
| | Attorneys for Defendants BANK OF AMERICA CORPORATION and BANK OF AMERICA, N.A. |